UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

|  |  |
|---|---|
| MAXUM INDEMNITY COMPANY )<br>Plaintiff )<br> )<br> ) Civil Case No. 5:15-cv-00167-RCL<br>vs. )<br> )<br>BRW FLOORS, INC., *et al.*, )<br>Defendants )<br> ) | |

## MEMORANDUM OPINION

Before this Court is defendant BRW Floor's ("BRW") motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Alternatively, BRW asks that this action be dismissed in favor of a parallel, later-filed action pending before the United States District Court in the Southern District of Florida on the ground that by filing this suit plaintiff Maxum Indemnity Company ("Maxum") engaged in inequitable conduct. After due consideration, the Court finds jurisdictional discovery relating to BRW's contacts within Texas appropriate and dismissal in favor of the parallel action unwarranted.

## I. BACKGROUND

This action stems from the installation of allegedly defective wood flooring products in a building located in San Antonio. Def.'s Mot. to Dismiss, ECF No. 22, at 3. Consequently, the owner of that building, The Broadway Tower San Antonio, Ltd. ("The Broadway"), a defendant in this action, brought suit against various entities, including W.E. Imhoff & Company ("W.E. Imhoff")—also a defendant in this action—in Texas state court alleging breach of contract,

1

fraud, negligent misrepresentation, and breach of both express and implied warranties.[1] *Id.* W.E. Imhoff then impleaded BRW as the putative manufacturer of the flooring products.[2] *Id.* at 5.

In response, BRW tendered a copy of the underlying lawsuit to Maxum requesting a defense and indemnity pursuant to BRW's general liability policy. *Id.* at 4. A little over two weeks later, Maxum informed BRW by letter that it would not provide a defense or indemnify BRW under the policy. *Id.* Five days later, Maxum instituted this action seeking a declaration that it is not liable under the policy to either BRW, The Broadway, or W.E. Imhoff. *Id.*

On August 10, 2015, the day prior to the filing of the instant motion, BRW brought suit against Maxum, but not W.E Imhoff or The Broadway, in the United States District Court for the Southern District of Florida alleging breach of contract as well as seeking declaratory relief.[3]

## II. DISCUSSION

In its Motion to Dismiss, BRW asserts two independent grounds for dismissal. BRW asserts first that this Court lacks both general and specific personal jurisdiction over BRW, and second that this Court should dismiss this action in favor of a parallel action filed in federal court in Florida. The Court finds both of those grounds inadequate.

### A. Maxum Has Made an Adequate Showing to Warrant Jurisdictional Discovery Regarding BRW's Activities Within Texas

A district court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute permits jurisdiction over that defendant, and (2) the exercise of personal jurisdiction does not offend the limits imposed by the Due Process clause of the

---

[1] *Broadway San Antonio, Ltd. v. W.E. Imhoff & Co., et al.*, Cause No. 2014-CI-09818 (137th Dist. Ct. Bexar County, Tex.)
[2] BRW has not raised the issue of personal jurisdiction in that proceeding.
[3] *BRW Floors, Inc. D/B/A Indusparquet v. Maxum Indemnity Co.*, No. 15-cv-22997 (S.D. Fla. filed Aug. 10, 2015).

Fourteenth Amendment. *Int'l. Energy Ventures Mgt., LLC v. United Energy, Ltd.*, No. 14-20552, 2015 WL 4979009, at *7 (5th Cir. Aug. 21, 2015) (quoting *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). Texas courts interpret the Texas long-arm statute, Texas Civil and Remedies Code §§ 17.041–.045, as reaching "as far as the federal constitutional requirements of due process will allow." *Guardian Royal Exch. Assur., Ltd. v. English China Clays, PLC.*, 815 S.W.2d 223, 226 (Tex. 1991). A court may exercise specific personal jurisdiction in accordance with constitutional limits even where the contacts with the forum state are "singular or sporadic," so long as the cause of action arises out of those contacts. *Int'l Energy Ventures*, WL 4979009 at *7 (citing *Daimler v. Bauman*, 134 S. Ct. 746, 754 (2014)). The Fifth Circuit applies the following test to determine if specific jurisdiction exists:

> (1) there are sufficient (i.e. not random, fortuitous, or attenuated) pre-litigation connections between the nonresident defendant and the forum; (2) the connection has been purposefully established by the defendant; and (3) the plaintiff's cause of action arises out of or is related to the defendant's forum contacts. Once the plaintiff makes that showing, the defendant can then defeat the exercise of specific jurisdiction by showing (4) that it would fail the fairness test, i.e., that the balance of interest factors show that the exercise of jurisdiction would be unreasonable.

*Int'l Energy Ventures*, WL 4979009 at *7 (quoting *Pervasive Software, Inc. v. Lexware GMBH & Co. KG*, 688 F.3d 214, 220 (5th Cir. 2012). Where a district court rules on a 12(b)(2) motion without first conducting an evidentiary hearing, the plaintiff need only satisfy this burden by making a prima facie showing that jurisdiction is proper. *Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014). In so ruling, a court "must accept the plaintiff's uncontroverted allegations, and resolve in his favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Id.* (quoting *Revel v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002) (internal quotation marks omitted).

Even where a plaintiff fails to make a prima facie showing, a court may nonetheless order jurisdictional discovery where an adequate showing of jurisdiction is presented. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (5th Cir. 2003). A court must sustain a plaintiff's right to jurisdictional discovery where the plaintiff makes non-frivolous allegations demonstrating the possible existence of the required contacts between the forum and the moving party. *Id.*

The present case presents difficult circumstances. BRW has not challenged personal jurisdiction in the underlying suit, but nevertheless asserts here that jurisdiction does not exist because courts in this District "ha[ve] made clear that jurisdiction can only exist where the defendant's contacts with Texas relate to the insurance policy at issue," notwithstanding the contacts giving rise to the underlying suit. Def.'s Mot. to Dismiss at 9. As a result, Maxum's allegations, even if true, would be insufficient to warrant jurisdictional discovery. The Court disagrees.

Although the Fifth Circuit has not squarely confronted this scenario, at least three district courts have. In the earliest of these cases, *Admiral Insurance Co. v. Briggs*, No. CIV.A 302-CV-0310P, 2002 WL 1461911, at *9 (N.D. Tex. July 2, 2002), the district court found specific jurisdiction over a nonresident defendant in a declaratory judgment action like the one at bar.[4] *Id.* The *Briggs* court reasoned that although bare participation in the underlying suit is insufficient without more to confer jurisdiction, where the conduct forming the basis of the underlying suit is an intentional tort directed at the forum state, such conduct is sufficient to establish minimum contacts. *Id.* at *7. The court further concluded that because the declaratory judgment suit was brought in response to a requested defense by the defendant, the underlying conduct "give[s] rise

---

[4] The *Briggs* court also found jurisdiction lacking over a co-defendant based on the fiduciary shield doctrine. *Briggs*, 2002 WL 1461911, at *6.

4

to the claim being asserted" in the declaratory action. *See id.* at \*7, \*9 ("Since this case concerns the extent of [an insurer's] duty to defend [a defendant] based on those allegations, it follows that it is also reasonably foreseeable that this action might bring him before this Court, as well."). Accordingly, the court concluded that the minimum contacts necessary to establish personal jurisdiction over the non-resident insured were present and the declaratory suit arose out of those contacts.

In *Gemini Insurance Co. v. Caprock Pipe and Supply, Inc.*, Case No. SA-04-CA-001-FB, ECF 15 at 22, 28 (W.D. Tex. Sep. 23, 2004), Chief Judge Biery dismissed a declaratory judgment action for lack of personal jurisdiction against a New Mexico pipe manufacturer and a New Mexico based pipe inspection company[5] because neither had sufficient pre-litigation contacts with the forum. While the manufacturer maintained stream-of-commerce principles were inapposite in an action based on the interpretation of an insurance contract, the inspection company argued contacts related to the formation of the contract in question are the only contacts relevant for jurisdictional purposes. *Id.* at 6. After exhaustively examining opinions[6] from various jurisdictions, the *Gemini* court granted both motions to dismiss, though on different grounds. Regarding the pipe inspection company, the court concluded minimum contacts did not exist because, unlike the defendants in *Briggs*, the defendants in *Gemini* were not invoking Texas insurance law in a Texas court, the facts surrounding the formation of the policy occurred entirely outside of Texas, and the company had no other contacts with Texas prior to the underlying litigation. *Id.* at 22. Moreover, the *Gemini* court dismissed the fact that the defendants

---

[5] The company was an additional insured under the manufacturer's policy. *Id.* at 2.
[6] The parties in this action also cite many of these cases. Despite *Gemini*'s thoughtful examination of them, the court did not expressly adopt a rationale from any single case.

had failed to raise the issue of personal jurisdiction in the underlying proceeding because the plaintiff-insurer was "in control of that action." *Id.*

On different grounds, the court concluded there were insufficient contacts to exercise jurisdiction over the manufacturer. The court focused its analysis on whether the plaintiff could rely on a stream-of-commerce theory to meet its burden under the minimum contacts prong. *Id.* at 20–31. The court found it could not, explaining:

> Not only is there no evidence that the defendants were purposefully serving markets broader than the states in which their initial sales are directed or made, the insurance policy at issue as well as the sale of the product all occurred in New Mexico without any contacts being made into the forum by [defendant] except the knowledge that [co-defendant] was taking the product into Texas.

*Id.* at 28. (quoting *Nuovo Pignone v. STORMAN ASIAN M/V*, 310 F.3d 374, 381 (5th Cir. 2002)) (internal quotation marks omitted) (internal citations omitted). The court further explained that even if it were to apply the Fifth Circuit's "relatively expansive stream-of-commerce principle requiring only mere foreseeability that a defendant might be haled into court because it has purposefully availed itself of the privileges of conduct business in the home forum," such foreseeability was not present because another party had unilaterally brought the product into Texas, and, additionally, the title to the product transferred outside of Texas. *Id.* at 30–31. (internal quotation marks omitted). Although apparently briefed by the parties, *id.* at 6, the *Gemini* court did not reach the question of causality—that is, whether a court in determining if a declaratory suit arises out of a defendant's forum contacts should limit its inquiry to only those contacts touching directly on the formation and execution of the contract in question or whether the contacts giving rise to the underlying litigation are also properly considered.

BRW also relies on *American Casualty Co. v. River's Edge Pharmaceuticals*, No. SA-05-CA-525-FB, 2006 WL 62819 (W.D. Tex. Jan. 10, 2006) in which Chief Judge Biery overruled

6

objections to a magistrate judge's having found jurisdiction lacking over an out-of-state insured in a declaratory judgment suit by an insurer. *Id.* at *1. The plaintiffs specifically objected that jurisdiction was proper because the defendant had participated in the underlying lawsuit in addition to engaging in tortious conduct within Texas. *Id.* In overruling the plaintiff's objections, the *River's Edge* court quotes at length from its decision in *Gemini* and unambiguously explains that the lack of allegations that the defendant had engaged in any conduct within Texas precluded a finding of specific jurisdiction. *Id.* Because the only remaining allegation of contact between the defendant and Texas was the underlying tort suit, the court concluded the plaintiff's objections were "without merit." *Id.*

### 1. *Minimum, Purposeful Contacts*

Maxum has made sufficient allegations regarding pre-litigation contacts to allow jurisdictional discovery. The parties do not dispute that BRW is not a resident of Texas; it is not licensed in Texas or authorized to conduct business in Texas; it maintains no office or assets in Texas; nor does it have a registered agent for service in Texas. Def.'s Mot. to Dismiss at 2–3. As a result, it is undisputed that BRW is not subject to general jurisdiction in this matter. The parties also do not dispute that the facts surrounding the execution and negotiation of the insurance agreement did not occur in Texas and are not otherwise connected to Texas. However, as set forth above, Maxum claims BRW intentionally markets and distributes its products to Texas distributors with the knowledge that its product will reach end consumers in this state. *See* Pl.'s Resp., ECF 24, at 5. BRW admits "[i]n the past, BRW has sold various hardwood flooring products to third-party distributors in the State of Texas." Def.'s Mot. to Dismiss, Ex. A. If it is shown that the particular products at issue in the underlying suit were intentionally marketed and sold in Texas such a showing would be sufficient to find minimum contacts. *See, e.g., Miss.*

*Interstate Exp., Invs. v. Transpo, Inc.*, 681 F.2d 1003, 1008 (5th Cir 1982); *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th. Cir. 1987). In this regard, Maxum's allegations are akin to those made in *Briggs* and are substantively different from those in *Gemini* and *River's Edge*. *See Briggs*, 2002 WL 1461911, at *7; *River's Edge*, 2006 WL 62819, at *12; *Gemini*, ECF 15, at *23. Whereas in *Gemini* and *River's Edge* there was no allegation the defendants' conduct occurred in the forum or was otherwise directed at the forum, Maxum alleges activities purposefully directed at Texas with the knowledge those activities would result in BRW's product reaching Texas consumers. Pl.'s Resp. at 5. These allegations make an adequate showing of the possible existence of the required contacts between BRW and Texas to meet the first and second prong of this Circuit's specific jurisdiction test.

### 2. *Whether This Cause of Action Arises from BRW's Alleged Contacts*

BRW posits that application of stream-of-commerce theory in this action is inapposite due to the Fifth Circuit's repeated refusal to extend the theory beyond the products liability context. Def.'s Reply, ECF 25, at 5 (quoting *Nuovo Pignone, SpA v. STORMAN ASIAN M/V* 310 F.3d 374, 380 (5th Cir. 2002). BRW argues a distinction between contacts that support the exercise of specific jurisdiction over a defendant manufacturer in a products liability action and contacts that support jurisdiction in an insurance coverage dispute. While it is true the Fifth Circuit has expressed reluctance to apply its stream-of-commerce theory outside of products liability actions, it nevertheless has relied on the theory in finding personal jurisdiction over a defendant in a breach of warranty action, *Gulf Consolidated Services v. Corinth Pipeworks, SA*, 898 F.2d 1071, 1074 (5th Cir. 1990), as well as a breach of contract action, *Nuovo Pignone, SpA v. STORMAN ASIAN M/V* 310 F.3d 374, 380 (5th Cir. 2002). In those cases where it has declined to extend the principle, it has done so on the ground that the contacts were insufficiently related

to the suit to uphold jurisdiction. *Ham v. La Cienaga Music Co.*, 4 F.3d 413, 416 (5th Cir. 2003); *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208 215 (5th Cir. 2000). In both of those cases, the plaintiffs claimed interference with either contractual or intellectual property rights from the distribution of products within the forum, but the court found the interference with those rights did not cause harm in the forum, concluding whatever contacts the defendants had were insufficiently related to the suit in question. *Ham*, 4 F.3d at 416; *Alpine View*, 205 F.3d at 216. Indeed, in *Alpine View*, the court found minimum contacts were not present even under a stream-of-commerce analysis. *Alpine View*, 205 F.3d at 216. Unlike those cases, the product allegedly distributed by BRW has caused harm in Texas, a fact that distinguishes both *Ham* and *Alpine View*.

Further, it is not entirely clear the Court need rely on stream-of-commerce theory to find minimum contacts. Generally, parties invoke and courts rely on stream-of-commerce theory where the defendant does not intentionally direct its product to a forum, but rather places the product in the stream of commerce which eventually brings the product to the forum. *See Nuovo Pignone*, 310 F.3d at 381; *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2855 (2011).[7] The Fifth Circuit, following *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S.

---

[7] The Fifth Circuit has also explained:

> [W]here a corporation with substantial contacts within state X ships into that state a product which it has manufactured in State Y and an injury occurs in state X because of an alleged defect in the product, the corporation may constitutionally be called upon to defend a products liability suit brought in state X where the injury occurred. This result also obtains where the manufacturer has elected to distribute his wares through independent wholesalers instead of through its own corporate apparatus so that it is only very indirectly responsible for the product reaching the injured consumer. The present trend is to take the next logical step and hold that corporation answerable where it introduces its product into the stream of interstate commerce if it had reason to know or expect that its product would be brought into the state where the injury occurred[.]

*Coulter v. Sears, Roebuck & Co.*, 426 F.2d 1315, 1318 (5th Cir. 1970) (citations omitted). The Supreme Court took the "next logical step" in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980), a case this Circuit still follows. *Irving v. Owens-Corning Fiberglas Corp.*, 864 F2d 383, 385–86 (1989); *Ainsworth v. Moffett Eng'g, Ltd.*,

9

286 (1980), requires only "mere foreseeability" that the stream-of-commerce will bring the product into the forum and explicitly rejects the need to find the defendant as having "purposefully directed its activities to the forum." *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010) (internal quotation marks omitted). On the other hand, outside of the stream-of-commerce context, the Fifth Circuit has held "when a nonresident defendant takes purposeful affirmative action the effect of which is to cause business activity foreseeable (by the defendant), in the forum state, such action by the defendant is considered a minimum contact for jurisdictional purposes." *Miss. Interstate*, 681 F.2d at 1008 (quoting *Marathon Metallic Bldg. Co. v. Mountain Empire Constr. Co.*, 653 F.2d 921, 923 (5th Cir 1981) (internal quotation marks omitted). Maxum alleges BRW directly markets and sells its products to distributors in Texas with the knowledge those distributors serve Texas consumers. Pl.'s Resp. at 5. These allegations, if substantiated, go beyond showing the "mere foreseeability" required under the Fifth Circuit's stream-of-commerce principle. Indeed, the contacts alleged by Maxum would be sufficient to find jurisdiction even under Justice O'Connor's stream-of-commerce-plus standard articulated in *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987). Thus, even if the Fifth Circuit's stream-of-commerce approach is inapposite here, as BRW suggests, Maxum's allegations go beyond those required to meet that test, therefore making reliance on it unnecessary. Rather, BRW's alleged contacts would be sufficient even under a traditional minimum contacts analysis in the Fifth Circuit. *See Miss. Interstate*, 681 F.2d at 1008.

The underlying minimum contacts theory notwithstanding, the question remains whether in a declaratory judgment action brought by an insurer against its insured, a court may properly

---

716 F.3d 174, 179 (5th Cir. 2013). This case is appropriately understood as falling into the second category described in the above quote.

exercise personal jurisdiction over the insured where, as here, the insured's only contacts with the forum are those predicating the insurance dispute itself. Neither *River's Edge* nor *Gemini* reached this question, while *Briggs* provides little analysis beyond a simple but-for rationale. *Briggs*, 2002 WL 1461911, at *7. BRW nevertheless invites this Court to follow the approach taken in *Northland Insurance Co. v. Berkebile Oil Co.*, No. Civ.A. 3:03CV00011, 2003 WL 22995127 (W.D. Va. Dec. 12, 2003).[8] In *Northland*, the court found that the sale of products alone is insufficient to warrant exercising personal jurisdiction over an insured-manufacturer in a declaratory judgment brought by an insurer. *Northland*, 2003 WL 22995127, at *5.[9] The *Northland* court concluded, rather, that "the issue of contract interpretation arises from the contacts relevant to the formation of the insurance agreement." *Id.* The Court declines BRW's invitation. While it is correct to conclude that the facts underlying the formation of the insurance agreement are relevant in a minimum contacts analysis, it is incorrect to conclude they are exclusively so. Rather, the defendant's own conduct sets the outer boundaries of relevancy to the extent it determines whether the defendant may reasonably anticipate being haled into court in the jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Where, as here, a manufacturer insures itself against the financial risks inherent in the manufacture and sale of a product, it is eminently foreseeable that the manufacturer may be required to litigate claims arising from both the product and the contract insuring the product in the States where it purposefully directs and sells that product. BRW maintains it "did not anticipate being sued in Texas with regard to the insurance policy at issue because neither BRW nor Maxum are located

---

[8] BRW also heavily relies on *National Indemnification Co. v. Pierce Waste Oil Services Inc.*, 740 F. Supp. 721 (E.D. Mo. 1990). The question in *Pierce*, however, was not whether sufficient contacts were present to satisfy the constitutional limits imposed by the Due Process Clause, but rather hinged upon the idiosyncrasies of the specific long-arm statute in question. *Id.* at 724. *Pierce* has little relevance here.
[9] By the court's own admission, its analysis was "abbreviated" because the parties had stipulated the court lacked personal jurisdiction over the defendant. *Id* at *4 n.4.

11

in Texas, and because none of the negotiations or other conversations concerning the policy occurred in Texas." Def.'s Mot. to Dismiss, Ex. A. BRW's lack of foresight is not pertinent here. What is pertinent here is that BRW engaged in conduct in or directed at Texas for which it now seeks indemnification and defense under this insurance agreement. It is that conduct that provides the nexus between this forum and the insurance agreement at issue.

*Northland* also fails to account for the state's interest in insurance policies held by manufacturers selling products to its citizens. As the Supreme Court noted in *McGee v. International Life Insurance Co.*, 355 U.S. 220, 224 (1957), states have a manifest interest in providing effective means of redress when insurers refuse to pay claims. Though attenuated in this context, that interest is no less acute. Where a manufacturer purposefully markets and sells a defective product in a state, it is that state's citizens who are injured, and it is those same citizens who may be undercompensated when insurance agreements are not honored or otherwise go unpaid. That is not to say that the state in which the manufacturer is at home does not have a concomitant interest in its own citizen receiving the benefits under its insurance contract, but rather it is a result mandated by the multifaceted nature of litigation in the interstate context where multiple coinciding interests may be present in a single action.

Maxum is therefore entitled to limited jurisdictional discovery regarding the nature and extent of BRW's activities, if any, in marketing, selling, or transporting the specific flooring products alleged to be defective in the underlying suit to entities or individuals located in Texas. Such discovery shall be completed within 60 days of this date. Within 10 days thereafter, BRW may file an answer to the complaint or a new motion to dismiss for lack of personal jurisdiction.

## B. Dismissal in Favor of the Florida Action is Not Warranted

The Fifth Circuit requires a district court to engage in a three-step inquiry when considering a declaratory judgment action. *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). That inquiry asks "(1) whether the declaratory judgment action is justiciable; (2) whether the court has the authority to grant the declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action." *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 387 (5th Cir. 2003). The present action presents a justiciable case and controversy. *See, e.g. Ironshoe Speciality Ins. Co. v. Tractor Supply Co.*, No. 14-51164, 2015 WL 5012122, at *3 (5th Cir. Aug. 25, 2015); *see also Med. Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 271–74 (1941). Moreover, this Court has the authority to decide this action pursuant to 28 U.S.C § 1332. The only issue that remains to be decided is whether to exercise this Court's discretion to decline to hear this case in favor of a parallel litigation pending before a district court in Florida.

Two parallel lines of cases are relevant here. On the one hand, the Fifth Circuit has variously mandated district courts address the factors it articulated in *St. Paul Insurance Co. v. Trejo*, 39 F.3d 585, 590–91 (5th Cir. 1994) in exercising discretion whether to hear or dismiss a suit brought under The Declaratory Judgment Act, 28 U.S.C. § 2201. Those factors are:

> (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;
>
> (2) whether the plaintiff filed suit in anticipation of a suit filed by the defendant;
>
> (3) whether the plaintiff engaged in forum shopping in bringing the suit;
>
> (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;
>
> (5) whether the federal court is a convenient forum for the parties and witnesses;
>
> (6) whether retaining the lawsuit would serve the purposes of judicial economy; and

> (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*Sherwin-Williams*, 343 F.3d at 388.

While BRW maintains the *Trejo* factors counsel dismissal in this case, Maxum invokes a parallel line of cases holding that when two actions involving the same parties and issues are pending in federal court, "the court with prior jurisdiction over the common subject matter should resolve all issues presented in related actions." *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 730 (5th Cir. 1985) (citing *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403 (5th Cir. 1971) (internal quotation marks omitted). This rule "is grounded in principles of comity and sound judicial administration." *Save Power Ltd. v. Syntek Finance Corp.*, 121 F.3d 947, 950 (5th Cir. 1997). The overriding concern here is "to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *Id.* (quoting *West Gulf*, 751 F.2d at 728). Only in "compelling circumstances" should a first-filed court exercise its discretion to dismiss in favor of a second-filed action. *Mann*, 439 F.2d at 407. Compelling circumstances may exist "if [the first-filed action] was filed for the purpose of anticipating a trial of the same issues in a court of coordinate jurisdiction." *909 Corp. v. Village of Bolingbrook Police Pension Fund*, 741 F. Supp. 1290, 1292 (S.D. Tex. 1990). Courts disfavor anticipatory suits because they utilize the Declaratory Judgment Act as a vehicle to "secure a more favorable forum by filing an action for declaratory judgment when it has notice the other party intends to file suit in a different forum." *Id.* Such conduct is disfavored because it incentivizes parties to "race to the courthouse," discourages a party's engaging in extra-judicial means of resolution before seeking redress from the courts, "deprive[s] a potential plaintiff of his choice of forum," and encourages procedural

14

fencing. *Id.* BRW claims the present action falls within this exception, therefore precluding the application of the first-filed rule.

### 1. *The* Trejo *Factors Counsel Retention*

The first *Trejo* factor asks whether there is a pending state suit in which all of the matters in controversy may be fully litigated. Here, there is no pending state proceeding. This factor weighs "strongly" against dismissal. *Sherwin-Williams*, 343 F.3d at 394.

The second *Trejo* factor looks to whether the plaintiff filed suit in anticipation of a suit filed by the defendant. This factor is neutral. The proximity of Maxum's denial of BRW's coverage claim and the filing of this suit is indicative of the type of anticipatory behavior disfavored in declaratory judgment actions. Because BRW's claims against Maxum would not become ripe until Maxum had denied BRW's coverage, that short span left BRW little time to react by engaging in negotiations or filing its own suit in its own choice of forum. Yet BRW's waiting five months to bring its own action in Florida indicates that a suit was not imminent when Maxum filed this action. Indeed, it leaves the impression BRW's action in Florida was filed as a response to this suit, rather than having been preempted by it.

The third *Trejo* factor requires the Court to inquire whether the plaintiff engaged in forum shopping. Aside from pointing out courts generally view anticipatory suits as impermissible forum shopping, BRW does not claim this forum provides Maxum any advantage. In response to BRW's claim, Maxum asserts that Texas is the only appropriate forum because it is the sole location in which personal jurisdiction may be concurrently exercised over BRW, The Broadway, and W.E. Imhoff. Pl.'s Resp. at 10. BRW does not contest this assertion, nor has it attempted to join these parties to the Florida suit. Accordingly, this factor is neutral.

The fourth *Trejo* factor focuses on whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist. As discussed above, Maxum left BRW very little time to evaluate its options before filing this suit. Moreover, BRW claims Maxum's quick filing amounted to "a race to the courthouse" that inequitably deprived BRW of its right as "true plaintiff." Def.'s Mot. to Dismiss at 17. Yet BRW overlooks the obvious: "there can be no race to the courthouse when only one party is running." *Learning Network, Inc. v. Discovery Comms., Inc.*, 11 Fed. App'x 297, 301 (4th Cir. 2001) (disregarding defendant's claims of inequitable race to the courthouse where defendant waited six weeks to file second action after being served in first action). BRW does not argue and the facts do not support the conclusion Maxum preempted the imminent filing of suit by BRW. This factor is also neutral.

The fifth *Trejo* factor considers whether this forum is convenient for the parties and witnesses. Although neither Maxum nor BRW are residents of Texas, nor was the policy at issue negotiated or executed in Texas, the remaining parties to this litigation are Texas residents and BRW has not challenged their presence here. Moreover, if BRW indeed manufactured the allegedly defective flooring product, at least some relevant evidence would be located in Texas. This factor is neutral.

The sixth *Trejo* factor examines whether this lawsuit serves the purposes of judicial economy. As discussed *infra*, it is doubtful whether the Florida action in its current form can afford complete relief to all interested parties. This factor weighs heavily against dismissal.

The seventh *Trejo* factor asks whether this Court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending. There is no such decree in this suit. This factor weighs against dismissal.

16

In sum, all *Trejo* factors are either neutral or weigh against dismissal. Consequently, dismissal under *Trejo* is unwarranted.

### 2. *BRW has Failed to Show Circumstances Warranting an Exception to the First Filed Rule*

As set forth above, only in "compelling circumstances" should a court exercise its discretion to dismiss in favor of a later-filed action. *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971). The crux of BRW's argument is that Maxum engaged in a race to the courthouse by filing suit five days after denying BRW's coverage claim. Def.'s Mot. to Dismiss at 14–15. Yet the majority of the cases BRW cites are factually distinguishable from the present circumstances. In each of those actions the insurer either had notice of an impending suit by the insured when it filed its declaratory judgment suit, filed suit concurrently or prior to its denial of coverage, or filed suit without providing a denial at all. *Great American Ins. Co. v. Houston Gen. Ins. Co.*, 735 F. Supp. 581, 586 (S.D. N.Y. 1990) (notice of impending suit); *RLI Ins. Co. v. Wainoco Oil & Gas Co.*, 131 Fed. App'x 970, 971 (5th Cir. 2005) (filed suit without providing a denial); *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 601 (5th Cir. 1983) (denied coverage and filed suit concurrently); *Granite State Ins. Co. v. Tandy Corp.*, 986 F.2d 94, 95 (5th Cir. 1992) (filed suit without providing a denial); *Liberty Mutual Fire Ins. Co. v. Bohms*, 490 Fed. App'x 721, 725–26 (same); *909 Corp. v. Village of Bollingbrook Police Pension Fund*, 741 F. Supp. 1290, 1291 (S.D. Tex. 1990) (notice of impending suit); *State Farm Fire and Cas. Co. v. Taylor*, 118 F.R.D 426, 428 (M.D. N.C. 1988) (filed suit prior to denying coverage).

Only *Commercial Union Insurance Cos. v. Torbaty*, 955 F. Supp. 1162 (E.D. Mo. 1997) and *Casualty Indemnity Exchange v. High Croft Enterprises*, 714 F. Supp. 1190 (M.D. Fla. 1989) provide analogous facts. In *Torbaty*, the district court declined to apply the first-filed rule where an insurer filed a declaratory judgment action against its insured only three days after

17

denying coverage. *Id.* at 1163. The court reasoned that such a short time deprived the insured of "adequate notice" and such deprivation provided compelling circumstances sufficient to avoid application of the first-filed rule. *Id.* The court also relied on the insured's having filed a state-court action one month after the insurer brought the declaratory suit. *Id.* That timing "provide[d] additional evidence that plaintiff filed its declaratory judgment action as a race to the courthouse." *Id.* at 1163–64. In *High Croft*, the district court concluded an insurer had engaged in a "type of procedural fencing" because it filed its declaratory action shortly after denying the insured's coverage claim. 714 F. Supp. at 1193. At *High Croft*'s heart is the recognition that the plaintiff in the action had filed the declaratory suit in order to "avoid the usual nondiverse situation of the insured suing both the insurer and insurance agent." *Id.* Plainly, the "type" of procedural fencing to which the court referred involved an attempt to avoid litigating in state court. *See id.*

Other than Maxum's timing in filing this suit, BRW adduces no evidence that indicates the presence of compelling circumstances. Rather, BRW's waiting over five months to file its action distinguishes this case from *Torbaty* and strongly counsels against finding the existence of compelling circumstances.[10] Further, there is no indication—as there was in *High Croft*—that Maxum filed this suit with the improper motivation of avoiding a state forum. That case is likewise distinguished.

---

[10] BRW fails to cite a single case where a court found the presence of compelling circumstances where the declaratory action defendant delayed for such an extended period. *See Great American*, 735 F. Supp. at 583 (filed state suit one day after lifting of temporary restraining order); *RLI*, 131 Fed. App'x at 971 (filed suit 13 days after declaratory action filed); *Granite State*, 986 F.2d at 95 (filed suit three weeks after declaratory suit filed); *Mission*, 706 F.2d at 600 (filed suit less than a month after declaratory action filed); *909 Corp.*, 741 F. Supp. at 1291 (same). Indeed, by filing the Florida action the day prior to filing the present motion, BRW creates significant doubt as to its motive in bringing that action.

Further still, this Court harbors doubts as to whether the Florida action may proceed in its present form. In both the Fifth and Eleventh Circuits, absent tort claimants are indispensable parties to an insurer's declaratory judgment action against an insured. *Ranger Ins. Co. v. United House of N.M., Inc.*, 488 F.2d 682, 682–84 (5th Cir. 1974); *American Safety Cas. Ins. Co. v. Condor Assocs., Ltd.*, 129 Fed. App'x 540, 542 (11th Cir. 2005).[11] That the underlying tort claimant in this case—The Broadway—is not a party in the Florida suit strongly counsels against finding the presence of compelling circumstances. To the extent BRW's cited authority relies on the principle that an anticipatory suit unjustly preempts a "true plaintiff" from filing in their choice of forum, that concern is mitigated where—like here—the parallel action may not afford complete relief to all interested parties.[12]

### III. CONCLUSION

Accordingly, a separate order will issue this date in which BRW's Motion to Dismiss shall be DENIED and limited jurisdictional discovery shall be GRANTED.

Royce C. Lamberth
United States District Judge

DATE: 10/7/15

---

[11] BRW cites *Canal Insurance Co. v. Xmex Transport, LLC*, 2013 WL 5740223 (W.D. Tex. Oct. 22, 2013) for the assertion that persons and entities not party to an insurance agreement are neither necessary nor indispensable in a declaratory construction suit. Def.'s Reply at 10. BRW fails to note that the party in question in *Canal* was another allegedly insured entity, rather than an absent tort claimant. *Id.* at *1. *Canal* is uninstructive here.

[12] Maxum alleges complete relief cannot be accorded because under both Texas and Florida law, a declaratory judgment obtained by an insurer is not binding on third-party claimants not party to the action. Pl.'s Resp. at 10–11. It is immaterial whether this is the case. Either the absent tort claimant will be bound, thereby resulting in prejudice to an interested party, or the absent tort claimant will not be bound, thereby subjecting the insurer to duplicative litigation. *See Ranger*, 488 F.2d at 684.